<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT<br>JUDGE | December 7, 2020 | MARTIN LUTHER KING<br>COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

Misael Arzola
Federal Prison Camp Schuylkill
P.O. Box 670
Minersville, PA 17954
*Pro Se Defendant*

David Malagold, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

**Re:**  *United States v. Arzola et al.*
 **Criminal Action No. 06-00569 (SDW)**

Counsel:

  Before this Court is Defendant Misael Arzola's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E. 265.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion without prejudice.

<u>**DISCUSSION**</u>

A.

  Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010), *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at \*2 (D.N.J. Apr. 9, 2020), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion
> of the defendant after the defendant has fully exhausted all administrative rights to

> appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the BOP to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

B.

Defendant is a 41-year old man with no diagnosable health conditions. (D.E. 265 at 1; D.E. 265-1.) On October 26, 2007, a jury returned a guilty verdict against Defendant for conspiracy to distribute five kilograms or more of cocaine and possession of a firearm during and in relation to a drug trafficking offense. (D.E. 149, D.E. 270 at 3.) In July 2008, this Court imposed a sentence of 248 months' imprisonment. (D.E. 144.) On March 1, 2017, this Court granted a joint motion for a reduction of sentence and reduced Defendant's sentence to 211 months. (D.E. 242.) Defendant is currently serving his sentence at the Federal Correctional Institution, Schuylkill ("FCI Schuylkill") in Pennsylvania. (D.E. 270 at 2; BOP, Find An Inmate (Dec. 3, 2020, 2:00 P.M.), www.bop.gov/inmateloc/.)

On September 2, 2020, Defendant filed a pro se motion requesting a reduction of sentence under the FSA. (D.E. 265.) In the alternative, Defendant requested that he be transferred to home confinement. (*Id.* at 3.) It is not clear from Defendant's motion whether he completed the requisite administrative steps (either exhausting all administrative rights to appeal a failure of the BOP to

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

bring a motion on his behalf or waiting for 30 days to lapse from the receipt of such a request by the warden of Defendant's facility) prior to filing with this Court. (*See id.* at 1-3.) In his motion, Defendant does aver that his "unit team" at FCI Schuylkill told him that he qualified for home confinement, but later reversed their position. (D.E. 265 at 2.) Defendant contends that his case manager "cancel[ed]" a plan to have him moved to home confinement because Defendant did "not have any medical conditions." (*Id.*)

Defendant takes issue with the safety precautions at FCI Schuylkill, averring that the facility affords "no way to avoid others or be six feet apart." (D.E. 265 at 1 (noting concerns regarding social distancing and water fountains).) Although Defendant does not explicitly reference the statutory language regarding "compelling" or "extraordinary" circumstances, construed liberally, Defendant's motion argues that the virus itself constitutes an extraordinary circumstance meriting his release. (*Id.*) Defendant acknowledges that he does not "have any medical conditions," but he argues that all inmates are susceptible, as the virus does not discriminate between "healthy, skinny[,] or obese" detainees. (D.E. 265 at 1.)

Defendant also references factors that arguably fall under Section 3553(a), such as the nature, history, and circumstances of his offense. *See* 18 U.S.C. § 3553(a). Defendant states that he is a "non-violent offender," with a low "score pattern," who has completed "75% or more of [his] sentence." (D.E. 265 at 1-3.) He also notes that he has a "family and a residence to go to," that his father is elderly and sick, and that his release would help his sister, who is overburdened with responsibilities. (*Id.* at 1-2.) Defendant also asserts that, during his confinement, he has kept out of trouble, worked, taken classes, completed trainings, and developed a reentry plan. (*Id.* at 2.)

On November 13, 2020, the Government filed an opposition to Defendant's motion for compassionate release. (D.E. 270.) The Government contends that Defendant has not exhausted administrative remedies, as would be required for this Court to exert jurisdiction. (D.E. 270 at 5-6.) The Government also contends that Defendant has failed to present evidence of "extraordinary and compelling" circumstances that could justify release, because: Defendant has no health issues; the BOP is taking proactive measures to control the virus; and Defendant has not shown that he faces any specific, rather than generalized, threat from COVID-19. (*Id.* at 6-9.) Finally, the Government argues that release would not be appropriate according to 18 U.S.C. Section 3553(a). (*Id*. at 7-12.) In particular, the Government argues that an additional reduction to Defendant's sentence would not reflect the seriousness of his offense. (*Id*. at 7-8.) Defendant did not file a reply.

C.

Construing Defendant's motion for compassionate release liberally,[2] this Court agrees that Defendant has failed to satisfy Section 3582(c)(1)(A)'s exhaustion requirement. Although Defendant suggests that he discussed the FSA and home confinement with FCI Schuylkill staff, Defendant does not mention a request to the BOP, the date that the request was made, the date of any official denial, or other evidence that he properly exhausted his claims. (D.E. 265; *see also* D.E. 270 at 5-6.) Without proof of administrative exhaustion, this Court lacks jurisdiction to

---

[2] *See Merritt v. Blaine,* 326 F.3d 157, 164 (3d Cir. 2003).

3

consider the petition's merits.[3] *Raia*, 954 F.3d at 597; *United States v. Dunich-Kolb*, Crim. No. 14-150, 2020 WL 6537386, at *1 n.1 (D.N.J. Nov. 5, 2020); *United States v. Cruz*, 455 F. Supp. 3d 154, 159 (M.D. Pa. 2020) (dismissing motion for lack of jurisdiction where "[Defendant] d[id] not indicate that he requested a transfer to home confinement to the warden at FCI-Schuylkill pursuant to the CARES Act."). As articulated by the Third Circuit:

> [D]efendant failed to comply with § 3582(c)(1)(A)'s exhaustion requirement: BOP has not had thirty days to consider [Defendant]'s request to move for compassionate release on his behalf, and there has been no adverse decision by BOP for [Defendant] to administratively exhaust within that time period (as such, we need not address administrative appeals here). . . [T]he exhaustion requirement … presents a glaring roadblock foreclosing compassionate release at this point . . . Accordingly, . . . we will deny Raia's motion outright.

*Raia*, 954 F.3d at 597; *Epstein*, 2020 WL 1808616 at *5. Consequently, this Court must deny Defendant's motion, as it lacks jurisdiction due to Defendant's failure to exhaust administrative remedies. *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 656-59 (E.D. Pa. 2020) ("[T]he Third Circuit's strong language regarding exhaustion leaves no wiggle room.") (citation omitted).

To cure this motion's jurisdictional defects, Defendant would need to present evidence demonstrating that he has exhausted administrative remedies.[4] However, this Court notes that, even if Defendant cures the current jurisdictional issues, other obstacles likely bar this Court from granting his requested relief. *See United States v. Viteri*, Crim. No. 19-44, 2020 WL 3396804, at *3 (D.N.J. June 19, 2020) (noting that compassionate release is "a rare event") (citation omitted). A summary of these additional obstacles follows.

First, Defendant has not established that "compelling and extraordinary reasons" justify his release. *See Epstein*, 2020 WL 1808616 at *2; *cf. United States v. Viteri*, Crim. No. 19-44, 2020 WL 3396804, at *4 (D.N.J. June 19, 2020) (even "affliction with various medical conditions [can be] insufficient to justify compassionate release [as] . . . the threshold question is whether defendant has demonstrated 'extraordinary and compelling' reasons"). Here, Defendant avers that, despite his lack of pre-existing health conditions, the COVID-19 infection poses a sufficient threat to merit his early release. (*See* D.E. 265 at 1-2.) However, the Third Circuit has considered and rejected this argument, stating that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597. It is now well-settled that "a generalized fear of the virus reaching a given institution is not a proper basis for release." *See, e.g.*, *United States v. Stallings*,

---

[3] Further, as Defendant specifically disputes FCI Schuylkill's efforts in controlling COVID-19's spread, his "case fits squarely within the parameters of the purposes of exhaustion." *Byrne v. Ortiz*, Civ. No. 20-12268, 2020 WL 7022670, at *3–5 (D.N.J. Nov. 30, 2020) (noting that the BOP should be given "an opportunity to correct [its] own mistakes").

[4] Defendant must ask the BOP to file a motion on his behalf to reduce his term of imprisonment. (D.E. 270 at 3-4; 18 U.S.C. § 3582(c)(1)(A).) Then, he must either wait for the BOP's decision regarding his request or, should the BOP fail to issue a timely decision, wait until 30 days following his request. 18 U.S.C. § 3582(c)(1)(A). After exhausting any available BOP appeals, Defendant will have exhausted his administrative remedies and may refile his motion. *Id.*

Crim. No. 12-37, 2020 WL 3619071, at *3–4 (M.D. Pa. July 2, 2020). As Defendant does not suffer from any medical conditions that would place him at an increased risk of serious illness, he falls short of this standard. *See* Centers for Disease Control, People With Certain Medical Conditions (Dec. 2, 2020, 4:00 P.M.), http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Defendant also avers that FCI Schuylkill lacks necessary safety measures to allow for social distancing. (D.E. 265 at 1.) This Court is sympathetic to Defendant's concerns regarding the risk of COVID-19 for inmates, which is highly transmissible, particularly in cramped conditions. There is little evidence, however, that Defendant currently faces an outsized risk of COVID-19 infection at FCI Schuylkill. In fact, at this time, there are no active COVID-19 cases at FCI Schuylkill. BOP, COVID-19 (Dec. 3, 2020, 9:00 AM), https://www.bop.gov/coronavirus. Throughout the pandemic, FCI Schuykill has reported a total of six cases: one positive inmate case and five positive staff cases. *Id.*; *see also United States v. Catanzarite*, Crim. No. 18-362, 2020 WL 2786927, at *5 (D.N.J. May 29, 2020) (given the lack of COVID-19 cases, this court is "'not currently prepared to find that Defendant's health, in combination with the conditions at [FCI Schuylkill], constitutes an extraordinary and compelling reason for Defendant's release.") (citation omitted).

Further, BOP has undertaken extensive efforts to stop the spread of the virus and prevent infected individuals from entering correctional facilities. (D.E. 270 at 8-10.) In light of skyrocketing COVID-19 infection rates nationally, FCI Schuylkill's apparent success at controlling the spread suggests that staff remain alert and vigilant regarding the virus's risks. *See, e.g.*, *United States v. Berry*, Crim. No. 10-51, 2020 WL 4035457, at *3 (D.N.J. July 17, 2020) ("[G]iven the markedly restrained progression of the virus within FCI Schuylkill . . . BOP's Action Plan appears to be having a positive impact."); *United States v. Stallings*, Crim. No. 12-37, 2020 WL 3619071, at *3–4 (M.D. Pa. July 2, 2020) (noting that a low infection rate suggests there "is not a strong likelihood that [Defendant] will be exposed to the COVID-19 virus at FCI [Schuylkill], and that the BOP is working hard to prevent such exposure from happening"). FCI Schuylkill's lack of COVID-19 cases further weighs against reducing Defendant's sentence.

Finally, Section 3553(a) likely acts as an independent bar to Defendant's request. 18 U.S.C. § 3582(c)(1)(A). This Court must ensure that, should Defendant's sentence be reduced, the reduced sentence still reflects the seriousness of his offense. *See* 18 U.S.C. § 3553(a). Here, Defendant's conviction involved his participation in a sizeable cocaine distribution network "throughout Essex and Hudson counties." (*See* D.E. 197 at 2; D.E. 270.) That network's associates armed themselves with weapons to "protect their narcotics trafficking activities," and Defendant himself was "found in possession of a loaded handgun at the time of [his] arrest." (D.E. 197 at 2; D.E. 270 at 7.) Therefore, although Defendant "calls himself a nonviolent offender," and this Court "take[s] his point that he was not accused of shooting or injuring anyone," his offense "involved the carrying of a loaded gun in connection with street-level [cocaine] dealing." *United States v. Terry*, Crim. No. 16-210, 2020 WL 3264086, at *4–5 (D.N.J. June 17, 2020). For crimes such as Defendant's, "[p]unishment, a just sentence, respect for the law, and deterrence of others all require a lengthy term of imprisonment." *Id.*

Considering the seriousness of Defendant's crime, reducing his sentence further would be incompatible with Section 3553(a).[5] The length of Defendant's sentence has already been meaningfully reduced by over two and a half years, from 248 months to 211 months. (D.E. 265; D.E. 270 at 3.) A further reduction would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment." *See* 18 U.S.C. § 3553(a)(2)(A). It would also create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").

Although this Court is sympathetic to Defendant's concerns regarding the risk of COVID-19, it lacks jurisdiction over this motion given Defendant's failure to exhaust administrative remedies. *Raia*, 954 F.3d at 597. Further, as noted above, even if this Court had jurisdiction, the record does not suggest that Defendant's claim meets the FSA's statutory requirements.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**.[6] An appropriate order follows.

    /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties

---

[5] Neither the Defendant's motion nor the Government's opposition discuss any record of discipline while Defendant has been detained. (*See* D.E. 265, 270.) Further, Defendant's "pro se submission is intelligent, measured, and respectful in tone," and he notes that he "has a supportive family to which he would like to return." *See Terry*, 2020 WL 3264086 at *4–5. Though these facts "bode well for the future," *id.*, this Court continues to believe that Defendant's current sentence is commensurate with the evidence presented at trial, and that the Section 3553(a) factors weigh against further reductions, *see* 18 U.S.C. § 3553(a).

[6] Defendant requests, in the alternative, that he be designated to serve the remainder of his sentence under home confinement. (D.E. 265 at 1, 3.) Although this Court does not have the authority to order such relief, it does have the authority to issue a recommendation to the BOP. *See* 18 U.S.C. § 3621(b)(4) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Ceballos*, 671 F.3d 852, 856 n.2 (9th Cir. 2011) (noting that "district courts [have] the authority to make (or not make) non-binding recommendations to the Bureau of Prisons at any time"). However, this Court declines to issue a recommendation at this time, as Defendant's motion suggests that the BOP has already taken corresponding steps to consider Defendant's eligibility for home confinement. (D.E. 265 at 1-2.)